## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MASSACHUSETTS

KIERAN JOSEPH LIEBL, INC.　§
d/b/a ROYAL OAKS DESIGN,　§
INC.,　§
　　　§
　　　Plaintiff,　§
　　　§　　Case No. _____
　　v.　§
　　　§
INDIAN FARM ESTATES, LLC,　§
and JAMES MARTORILLI,　§
　　　§
　　　Defendants.　§

## COMPLAINT

Plaintiff Kieran Joseph Liebl, Inc. d/b/a Royal Oaks Design, Inc. ("ROD") complains of Indian Farm Estates, LLC ("IFE") and James Martorilli ("Martorilli"), and for cause would show the following:

### Parties, Jurisdiction, and Venue

1.　　ROD is a corporation duly organized under the laws of the state of Minnesota.

2.　　IFE is a Massachusetts limited liability company.  It may be served with process by serving its registered agent, James Martorilli, at 272 Bacon Street, Waltham, MA 02451, or wherever he may be found.

3.　　Martorilli is an individual residing in this district, and may be served with process at 272 Bacon Street, Waltham, MA 02451, or wherever he may be found.

4.     This is a case for copyright infringement and violations of the Digital Millennium Copyright Act (17 U.S.C. § 1201 *et seq.*; the "DMCA").  This Court therefore has exclusive subject matter jurisdiction pursuant to 28 U.S.C. § 1338.

5.     Venue is proper pursuant to 28 U.S.C. § 1400(a) because each defendant may be found to reside and/or conduct business in this district.

<u>Factual Background</u>

6.     ROD is a building design firm in the business of creating "architectural works" (as that term is defined in Title 17, United States Code) and licensing the use of architectural works, and technical drawings and renderings that depict such architectural works, that ROD has created.

7.     ROD is the creator and sole owner of the copyrights in the following architectural works (hereinafter, the "Architectural Works"):

   a.  CL-18-006 (a/k/a "Misty Grove").  ROD has registered its copyrights in this architectural work, as evidenced by Certificate of Registration No. VA 2-262-372.

   b.  CL-18-019 (a/k/a "Owl Feather").  ROD has registered its copyrights in this architectural work, as evidenced by Certificate of Registration No. VA 2-261-937.

c.  CL-19-003 (a/k/a "Bird Creek").  ROD has registered its copyrights in this architectural work, as evidenced by Certificate of Registration No. VA 2-328-426.

d.  CL-20-002 (a/k/a "Rock Creek").  ROD has registered its copyrights in this architectural work, as evidenced by Certificate of Registration No. VA 2-261-080.

e.  CL-20-003 (a/k/a "Pebble Creek").   ROD has registered its copyrights in this architectural work, as evidenced by Certificate of Registration No. VA 2-262-360.

f.  CL-20-012 (a/k/a "Delta").  ROD has registered its copyrights in this architectural work, as evidenced by Certificate of Registration No. VA 2-262-310.

g.  CL-20-020 (a/k/a "Cedar Bluff").  ROD has registered its copyrights in this architectural work, as evidenced by Certificate of Registration No. VA 2-262-320.

8.  Each of the Architectural Works is an original work that is copyrightable subject matter under federal law.  Each Architectural Work constitutes and contains material wholly original to ROD, including the overall look and feel of the works, and the selection and arrangement of the constituent parts of the work.  Each of the

Architectural Works is ROD's original creation and was not copied from the works of others, and have been fixed in a tangible medium of expression.

9.     ROD is also the creator and sole owner of the copyrights in the technical drawings and renderings depicting each of the Architectural Works.  These technical drawings and renderings are "pictorial, graphical, and sculptural works," as defined in Title 17, United States Code, and will hereinafter be referenced as the "PGS Works."[1]

10.     Each of the PGS Works is an original work that is copyrightable subject matter under federal law.  Each work constitutes and contains material wholly original to ROD, including the overall look and feel of the works, and the selection and arrangement of the constituent parts of the work.  Each of the PGS Works is ROD's original creation and was not copied from the works of others and have been fixed in a tangible medium of expression.

11.     To protect its work, ROD placed "copyright management information," as that term is used in 17 U.S.C. § 1202, on copies of the Architectural Works and the PGS Works.  This copyright management information includes a copyright notice,

---

[1]     At this time, ROD has applied for but has not yet received certificates of registration for each of the PGS Works copyrights.  When those are received, ROD will be seeking leave to amend to add claims for infringement of the PGS Works copyrights.   (Registration is not required for ROD to assert claims for DMCA violations associated with infringement of PGS Works copyrights.)

and the title of the work, both of which are copyright management information as defined in 17 U.S.C. § 1202(c).

12.     This copyright management information was placed on both physical and electronic copies of the Architectural Works and PGS Works, including electronic copies of such works displayed on the ROD website, www.royaloaksdesign.com. The Architectural Works and PGS Works were displayed on individual pages that included ROD's copyright management information, including ROD's copyright notices and the titles of the work.

13.     On information and belief, IFE is a real estate developer and home builder, and is developing a real estate project in Hudson, Massachusetts known as Indian Farm Estates.

14.     It is well known in the real estate and homebuilding industries, especially since the passage of the Architectural Works Copyright Protection Act of 1990, that it is improper and illegal to reproduce, distribute, and create copies of and derivative works from architectural works and other copyrighted materials without the permission of the copyright owner.

15.     As IFE is a sophisticated real estate developer, it has known or has had reasonable grounds to have known, that reproducing, distributing, and creating copies of and derivative works from architectural works and other copyrighted materials without the permission of the copyright owner is illegal and improper.

5

16.     On information and belief, Martorilli is the owner of IFE.  As such, at all material times he has had a direct financial interest in all of its activities, including those complained of in this lawsuit.

17.     Martorilli is the sole Manager of IFE.  As such, at all material times he has had the legal power and ability to supervise and control all of its activities, including those complained of in this lawsuit.

18.     On information and belief, in approximately April 2021, IFE obtained copies of ROD's marketing materials for the Architectural Works, which included at least some of the PGS Works.

19.     At no time has ROD authorized IFE to reproduce, distribute, construct, or create derivatives of any of the Architectural Works or PGS Works.

20.     On April 29, 2021, IFE wrote its contractor (Nash Quidir) and identified each of the Architectural Works as among the "house designs to be placed on" particular designated lots in the Indian Farm Estate development.   Specifically, it directed "Pebble Creek" to be placed on Lot 2, "Delta" to be placed on Lot 3, "Bird Creek" to be placed on Lot 4, "Cedar Bluff" to be placed on Lot 5, "Owl Feather" to be placed on Lot 11, "Rock Creek" to be placed on Lot 14, and "Misty Grove" to be placed on Lot 18.

21.     On August 28, 2021, IFE wrote its marketing agent for the Indian Farm Estate development (Advantage Property Team), directing them to rename the ROD house

designs that were slated to be used on Lots 2, 3, 4, 11; *i.e.*, to change "Pebble Creek" to "Juniper," "Delta" to "Maple," "Bird Creek" to "Willow," and "Owl Feather" to "Walnut."

22.    At some point, IFE similarly changed the name of ROD's "Misty Grove" work to "Fern."

23.    On information and belief, at some point IFE similarly changed the name of ROD's 'Rock Creek" work.

24.    In June 2022, Martorilli, personally, purchased a license from ROD to construct a house based on another ROD architectural work, CL-19-002 (a/k/a "Cherry Pond Farm").   However, the terms of the license were that it was non transferrable, was restricted to that specific design, and allowed reproduction only as required for such construction.

25.    Based on his purchase of a license from ROD for the use of CL-19-002 evidences, Martorilli knew or reasonably should have known of the need to purchase licenses for the use of ROD's Architectural Works and PGS Works, as well as his knowledge of ROD's identify by no later than June 2022.

26.    On information and belief, IFE reproduced and distributed copies of each of the Architectural Works and PGS Works in the development of the Indian Farm Estates project, including to contractors, lenders, marketers, governmental authorities, and others.

27.   In 2022, IFE constructed or caused to be constructed houses at the following addresses in the Indian Farms Estate development that are copies or derivatives of the following Architectural Works:

| IFE Lot # | Address | ROD Architectural Work |
|---|---|---|
| 2 | #5 Indian Farm Road | CL-20-003 ("Pebble Creek") |
| 3 | #7 Indian Farm Road | CL-20-012 ("Delta") |
| 4 | #9 Indian Farm Road | CL-19-003 ("Bird Creek") |
| 5 | #11 Indian Farm Road | CL-19-003 ("Bird Creek") |
| 13 | #14 Indian Farm Road | CL-20-003 ("Pebble Creek") |
| 14 | #12 Indian Farm Road | CL-20-012 ("Delta") |
| 15 | #6 Indian Farm Road | CL-19-003 ("Bird Creek") |

These houses will hereinafter be referred to as the "Infringing Houses."

28.   ROD has never authorized IFE to reproduce, distribute, construct, or make other of any of the Architectural Works or PGS Works.

29.   The Infringing Houses are each copies or derivatives of the identified Architectural Work.

30.   On information and belief, in connection with the construction of each Infringing House, IFE either created or caused the creation of construction drawings for those houses (hereinafter, the "Infringing Plans").

31.   The Infringing Plans are copies or derivatives of the associated ROD Architectural Works and PGS Works.

32.   ROD has never authorized IFE to create, reproduce, distribute, or make other of any of the Infringing Plans.

33.     In connection with the construction and marketing of the Infringing Houses, IFE reproduced and distributed copies of the Infringing Plans, including to contractors subcontractors, governmental authorities, lenders, and others.

34.     IFE's website (www.indianfarmestates.com) also reproduced and distributed literal copies of the Architectural Works and PGS Works, but without IFE's copyright management information, and bearing false titles, including:

      a.  CL-18-006 ("Misty Grove") was renamed "Fern."

      b.  CL-18-019 ("Owl Feather") was renamed "Walnut."

      c.  CL-19-003 ("Bird Creek") was renamed "Willow."

      d.  CL-20-003 ("Pebble Creek") was renamed "Juniper."

      e.  CL-20-012 ("Delta") was renamed "Maple."

35.     The titles 'Fern," "Walnut," "Willow," "Juniper," and "Maple," when applied to the ROD works identified above, are false copyright management information.

36.     On information and belief, IFE's use of a title other than "Rock Creek" for that ROD was false copyright management information.

37.     ROD did not authorize IFE to rename or retitle any of ROD's works.

38.     At all material times, IFE knew that it had no permission from ROD to reproduce and distribute copies of ROD's works, and that its doing so was copyright infringement.

39.     At all materials times, IFE knew that it had no permission from ROD to

rename or retitle any of ROD's works.

40.    At all materials times, IFE renaming of the Architectural Works and PGS Works with done the intent of concealing its infringement of ROD's copyrights.

41.    The IFE website also distributed a form of a "Homesite Reservation Agreement," which included the following statement: "All designs are and will be the property of Indian Farm Estates."

42.    This statement was false copyright management information, as IFE was not the owner of the ROD designs reproduced and distributed on the IFE  website.

43.    At all materials times, IFE knew it was not the owner of the ROD designs reproduced and distributed on the IFE website.

44.    At all material times, IFE's distribution of false copyright management information, in the form of its claim to be the owner of the ROD designs, was made with the intent of concealing its infringement of ROD's copyrights.

45.    Each time a visitor went to the portion of the IFE website containing copy of one of the Architectural Works or PGS Works that bore a false title, the IFE website distributed false copyright management information to that distinct visitor, in the form of a false title of the work.

46.    Each time a visitor went to the portion of the IFE website displaying the IFE Homesite Reservation Agreement, the IFE website distributed false copyright management information to that distinct visitor, in the form of a false representation

that IFE was the owner of the designs.

47.     On information and belief, each time IFE distributed a copy of one of the Architectural Works or PGS Works bearing a false title by such other advertising means, each such distribution distributed false copyright management to the recipient, in the form of a distinct copy of the associated ROD Architectural Work and PGS Work bearing a false title of the work.

48.     On information and belief, IFE distributed copies of its Homesite Reservation Agreement by e-mail and other means.

49.     On information and belief, each time IFE distributed copies of its Homesite Reservation Agreement by e-mail or other means, each such communication distributed false copyright management to the recipient, in the form of a false representation that IFE was the owner of the designs.

50.     Each time a visitor went to the portion of the IFE website containing a copy of one of the Architectural Works or PGS Works, the IFE website distributed a distinct copy of an ROD Architectural Work or PGS Work from which ROD's copyright management information had been removed.

51.     On information and belief, IFE similarly distributed copies of the Architectural Works and PGS Works via Facebook, Instagram, and other social media channels.

52.     On information and belief, each time a visitor went to an IFE Facebook,

Instagram, or other social media page bearing a copy of one of the Architectural Works or PGS Works, the IFE Facebook, Instagram, or other social media page distributed a distinct copy of the associated ROD Architectural Work or PGS Work from which ROD's copyright management information had been removed.

53.    On information and belief, each time a visitor went to an IFE Facebook, Instagram, or other social media page bearing a copy of one of the Architectural Works or PGS Works that bore a false title, a copy of one of the Infringing Works, the IFE Facebook, Instagram, or other social media page distributed false copyright management information, in the form of a false title of the work.

54.    IFE also reproduced and distributed copies literal copies of the Architectural Works and PGS Works, but without IFE's copyright management information, and/or bearing false / renamed titles, in other means of advertising, including brochures and, on information and belief, other printed materials, e-mails, and other electronically transmitted methods.   For example, attached as Exhibit 1 is a copy of an IFE brochure.   This exhibit contains literal copies of ROD's CL-20-003 ("Rock Creek") work, but without ROD's copyright notice and title:

| CL-20-003 (from ROD's website) | IFE Brochure |
|---|---|



55.     On information and belief, each time IFE distributed a copy of one of the Architectural Works or PGS Works by such other advertising means, each such distribution distributed a distinct copy to the recipient of the associated ROD Architectural Work or PGS Work from which ROD's copyright management information had been removed.

56.     ROD did not authorize IFE to remove its copyright management information from copies of ROD's works.

57.   On information and belief, at all material times IFE knew that it was distributing copies of ROD's works that had had ROD copyright information removed or altered.

58.   On information and belief, at all material times IFE knew or had reasonable grounds to know, that distribution of copies of ROD works that had removed ROD's copyright management information would induce, enable, facilitate, or conceal IFE's infringement of ROD's Architectural Works or PGS Works copyrights.

59.   IFE sold the house located at #9 Indian Farm Road on or about October 14, 2022 for $929,900.

60.   IFE sold the house located at #7 Indian Farm Road on or about November 20, 2022 for $963,950.

61.   In December 2022, ROD discovered that IFE was displaying and distributing copies of each of the Architectural Works and the PGS Works depicting them via the IFE website, had constructed and was constructing the Infringing Houses, and was marketing the Infringing Houses.

62.   ROD wrote IFE on December 3, 2022, warning IFE that it was reproducing and displaying copies of ROD's works without the required licenses, and requesting IFE contact ROD to discuss this matter.   After IFE failed to respond, ROD sent IFE a formal cease and desist letter on December 6, 2022.

63.     On approximately December 14, 2022, ROD was contacted by Edward Prisby, who identified himself as counsel for IFE.  He claimed to need "a day or two" to consult with his client and respond to ROD's demand.   However, despite repeated requests from ROD, Mr. Prisby did not substantively respond for over a month.

64.     Meanwhile, notwithstanding ROD's cease and desist letter and its engagement of counsel, on or about January 9, 2023, IFE sold the house at #12 Indian Farm Road for $1,166,299.

65.     On information and belief, prior to the closing of the sale, neither IFE nor its counsel disclosed the existence of ROD's claims to the purchaser of the house at #12 Indian Farm Road.

66.     On January 18, 2023, Mr. Prisby finally responded, in a letter in which he admitted that IFE had indeed used copies of ROD's works in IFE's advertising, and that ROD architectural works CL-20-003 and CL-20-012 "inadvertently were used in the construction" of the Infringing Houses at #5 Indian Farm Road, #7 Indian Farm Road, #12 Indian Farm Road, and #14 Indian Farm Road.

67.     The very next day, January 19, 2023, IFE sold the Infringing House at #10 Indian Farm Road for $949,750, again after being on notice of ROD's cease and desist demand and having had counsel engaged for over a month.

68.    On information and belief, prior to the closing of the sale, neither IFE nor its counsel disclosed the existence of ROD's claims to the purchaser of the house at #10 Indian Farm Road.

69.    Thereafter, ROD engaged counsel, who sent a renewed cease and desist demand on January 31, 2023, and sent additional communications warning of the consequences if IFE continued to sell the Infringing Houses.

70.    Despite its counsel receiving numerous additional warnings, on or about March 21, 2023 sold the house located at #5 Indian Farms Road for $1,154,900 – notwithstanding that this was one of the houses Mr. Prisby admitted was "inadvertently" constructed from an ROD copyrighted design.

71.    On information and belief, prior to the closing of the sale, neither IFE nor its counsel disclosed the existence of ROD's claims to the purchaser of the house at #5 Indian Farm Road.

72.    IFE's acts described above were committed willfully.

73.    To the extent that any of the actions described above were undertaken on behalf of IFE by third parties (including but not limited to third party contractors, subcontractors, draftsmen, designers, engineers, graphic designers, webmasters, or marketing agents), then on information and belief IFE had a financial interest in such actions and had the right to supervise and control them.

74.     To the extent that any of the actions described above were undertaken by third parties at the direction of IFE (including but not limited to third party contractors, subcontractors, draftsmen, designers, engineers, graphic designers, webmasters, or marketing agents), then on information and belief IFE induced, caused, encouraged, aided, abetted, assisted, or facilitated such acts, while on notice of IFE's copyrights.

75.     To the extent that any of the actions described above were undertaken by third parties at the direction of Martorilli (including but not limited to third party contractors, subcontractors, draftsmen, designers, engineers, graphic designers, webmasters, or marketing agents), then on information and belief Martorilli induced, caused, encouraged, aided, abetted, assisted, or facilitated such acts, while on notice of IFE's copyrights.

### COUNT I:  COPYRIGHT INFRINGEMENT BY ALL DEFENDANTS

76.     ROD complains of all defendants for copyright infringement of its Architectural Works copyrights pursuant to 17 U.S.C. § 501.  ROD incorporates by reference paragraphs 1-75 above.

77.     As used herein, each Infringing House, Infringing Plan, or copy or derivative of an Architectural Work or PGS Work created or distributed by or on behalf of IFE will be referred to as an "Infringing Work."

78.   IFE's creation of copies of each Infringing Work infringed ROD's copyrights in the associated Architectural Work, in that it violated ROD's exclusive right of reproduction.

79.   Any creation of copies of each Infringing Work by a third party on behalf of IFE or at its direction or request, infringed ROD's copyrights in the associated Architectural Work, in that it violated ROD's exclusive right of reproduction.

80.   IFE's distribution of copies of each Infringing Work infringed ROD's copyrights in the associated Architectural Work, in that it violated ROD's exclusive right of distribution.

81.   Any distribution of copies of each Infringing Work by a third party on behalf of IFE or at its direction or request, infringed ROD's copyrights in the associated Architectural Work, in that it violated ROD's exclusive right of reproduction.

82.   IFE's construction of each Infringing House infringed ROD's copyrights in the associated Architectural Work, in that it violated ROD's exclusive rights of reproduction and/or to create derivative works.

83.   IFE's sale or other distribution of each Infringing House infringed ROD's copyrights in the associated Architectural Work, in that it violated ROD's exclusive right of distribution.

84.   IFE's creation of each of the Infringing Plans infringed ROD's copyrights in the associated Architectural Work, in that it violated ROD's exclusive rights of reproduction and/or to create derivative works.

85.   Any creation of each of the Infringing Plans by a third party on behalf of IFE or at its direction or request, infringed ROD's copyrights in the associated Architectural Work, in that it violated ROD's exclusive right of reproduction and/or to create derivative works.

86.   IFE's distribution of copies of each of the Infringing Plans infringed ROD's copyrights in the associated Architectural Work, in that it violated ROD's exclusive rights of distribution and/or to create derivative works.

87.   Any distribution of each of the Infringing Plans by a third party on behalf of IFE or at its direction or request, infringed ROD's copyrights in the associated Architectural Work, in that it violated ROD's exclusive right of distribution and/or to create derivative works.

88.   IFE is a contributory infringer for any acts of infringement described above that were committed by third parties at IFE's request or direction.

89.   Martorilli is a contributory infringer for any acts of infringement described above that were committed by third parties at IFE's request or direction.

90.   IFE is vicariously liable for any acts of infringement described above that were committed by third parties on behalf of IFE.

91.     Martorilli is vicariously liable for IFE's acts of copyright infringement and contributory infringement, and as such is jointly and severally liable for any judgment for copyright infringement and/or contributory infringement that is entered against IFE.

92.     Martorilli is contributorily liable for IFE's acts of infringement, and as such is jointly and severally liable with IFE for any judgment for copyright infringement and/or contributory infringement that is entered against IFE.

93.     Pursuant to 17 U.S.C. § 504(b), IFE is entitled to recover its actual damages and all of IFE's profits attributable to its infringement of ROD's copyrights in the Architectural Works.

94.     Alternatively, pursuant to 17 U.S.C. § 504(c), ROD is entitled to recover statutory damages from IFE for the infringement of each Architectural Work, including enhancements for willful infringement.

95.     ROD is entitled to recover pre-and post-judgment interest, reasonable attorney's fees, and costs of court from IFE.

96.     ROD is entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502 prohibiting defendants from further infringement of ROD's Architectural Works copyrights.

97.     ROD is entitled to an Order pursuant to 17 U.S.C. § 503 directing the United States Marshal's Service to (a) impound, during the pendency of this lawsuit, all

copies of materials in any defendant's possession that infringe ROD's copyrights in any Architectural Work; and (b) upon final hearing of this case, to destroy or otherwise dispose of those copies.

## COUNT II: VIOLATIONS OF DMCA § 1202 BY ALL DEFENDANTS

98.    ROD complains of IFE for violations of DMCA § 1202(a).  ROD incorporates by reference paragraphs 1-97 above.

99.    Each removal, by IFE or those acting on its behalf, of ROD's copyright management information from any copy of an Architectural Work or PGS Work was a violation of § 1202(b)(1) of the DMCA.

100.   Each distribution of a copy of an Infringing Work by IFE was a violation of § 1202(b)(3) of the DMCA.

101.   Each distribution of a copy of an Infringing Work bearing a false title was a violation of § 1202(a)(2) of the DMCA.

102.   Each distribution of a copy of the IFE Homesite Reservation Agreement bearing a claim that IFE was the owner of the designs was a violation of § 1202(a)(2) of the DMCA.

103.   IFE is contributorily liable for any DMCA § 1202 violations described above that were committed by third parties at IFE's request or direction.

104.   IFE is vicariously liable for any DMCA § 1202 violations described above that were committed by third parties.

105.    Pursuant to 17 U.S.C. § 1203(c)(3)(B), ROD is entitled to recover statutory damages of between $2,500 and $25,000 from IFE for each violation of DMCA § 1202.

106.    ROD is entitled to recover pre-and post-judgment interest, costs of court, and reasonable attorney's fees from each defendant.

107.    Martorilli is vicariously liable for IFE's DMCA § 1202 violations, and as such is jointly and severally liable for any judgment for DMCA § 1202 violations entered against IFE.

108.    Martorilli is contributorily liable for IFE's DMCA § 1202 violations, and as such is jointly and severally liable for any judgment for DMCA § 1202 violations entered against IFE.

109.    ROD is entitled to preliminary and permanent injunctive relief to prevent defendants from committing further violations of DMCA § 1202.

## PRAYERS FOR RELIEF

**Wherefore**, Kieran Joseph Liebl, Inc d/b/a Royal Oaks Design, Inc. hereby seeks the following relief:

1. Pursuant to 17 U.S.C. § 504(b), awards of actual damages and infringer profits against each of the Defendants for copyright infringement, whether committed by a Defendant directly, a party for which a Defendant is vicariously liable, or a party for which a Defendant is contributorily liable.

2.  Alternatively, pursuant to 17 U.S.C. § 504(c), an award of statutory damages against each of the Defendants for copyright infringement, whether committed by a Defendant directly, a party for which a Defendant is vicariously liable, or a party for which a Defendant is contributorily liable.

3.  Pursuant to 17 U.S.C. § 1203(c)(3)(B), an award of statutory damages against each defendant for each violation of 17 U.S.C. § 1202, whether committed by a Defendant directly, a party for which a Defendant is vicariously liable, or a party for which a Defendant is contributorily liable.

4.  A finding of joint and several liability against Martorilli for any award against IFE, based on a finding of contributory infringement and/or vicarious liability;

5.  Pursuant to 17 U.S.C. § 502, preliminary and permanent injunctions enjoining Defendants and their respective agents, employees, attorneys, representatives, and parties in privity with either of them, from any further acts directly or indirectly infringing on ROD's copyright in the Architectural Works and/or PGS Works.

6.  Pursuant to 17 U.S.C. § 503, an order compelling the impoundment and destruction of all copies of ROD's Architectural Works and/or PGS Works found to have been made in violation of ROD's exclusive rights.

7.  An award of reasonable attorneys fees.

8.  Awards of costs of court, and pre- and post-judgment interest at the lawful rate.

9.  The grant of any other legal or equitable relief that this Honorable Court deems proper;

## TRIAL BY A JURY

Plaintiff demands a trial by jury for all issues so triable to a jury.

Respectfully submitted,

_____
Jeffrey S. Baker, Esq.
Baker and Assocs.
Suite 100
2 W Hill Pl
Boston MA 02114
617 953 6747
BBO#544929
Bakerlaw@aol.com

**Counsel for Plaintiff,**
**Kieran Joseph Liebl, Inc.,**
**d/b/a Royal Oaks Design, Inc.**

By: _____

Louis K. Bonham
(***pro hac vice*** application pending)
Texas Bar No. 02597700
OSHA BERGMAN WATANABE
& BURTON LLP
1100 Louisiana Street, Suite 4900
Houston, Texas 77002
713.228.8600
*bonham@obwbip.com*

**Counsel for Plaintiff,**
**Kieran Joseph Liebl, Inc.,**
**d/b/a Royal Oaks Design, Inc.**